508 So.2d 1384 (1987)
STATE of Louisiana
v.
Cranford WHEELER.
(In re SOUTH CENTRAL INSURANCE COMPANY).
No. 87-KK-0068.
Supreme Court of Louisiana.
June 30, 1987.
Rehearing Denied September 3, 1987.
*1385 Graymond Martin, New Orleans, for applicant.
William J. Guste, Atty. Gen., Baton Rouge, Harry F. Connick, Dist. Atty., Michael McMahon, Asst. Dist. Atty., New Orleans, Michael O'Farrell, Monroe, Dwight Doskey, New Orleans, Alden Netterville, Gretna, for respondent.
COLE, Justice.
We granted an application by South Central Insurance Company (SCIC) for a writ of certiorari to review the judgment of the Court of Appeal[1] affirming the trial court's denial of SCIC's Motion to Set Aside the Judgment of Bond Forfeiture and Petition for Nullity of Judgment, as surety for Cranford Wheeler. SCIC contends it is not liable on the bail bond, as the bond was rescinded by the trial court, then reinstated without their consent. SCIC further contends defendant Cranford Wheeler was properly surrendered to the trial court, according to La.Code Crim.P. art. 338(A), for the purpose of surety release. Reliance by SCIC is placed upon La.Civ.Code arts. 1892, 3035-3037, and 3063; La.R.S. 15:85(A)(3); and article 338(A) of the La.Code of Criminal Procedure.
We affirm.

ISSUES
The first question presented is whether or not the setting aside of the judgment of bond forfeiture changed the obligation of the surety on the bail contract.
Secondly, we must determine whether or not defendant Cranford Wheeler was properly surrendered under La.Code Crim.P. art. 338, thus releasing the surety of its obligation.

FACTS
On July 31, 1984, Cranford S. Wheeler was charged with violating La.R.S. 32:705. Bail was set at $2,000 and arraignment was scheduled for August 9, 1984. SCIC filed a $2,000 commercial surety bond on August 1, 1984, for defendant's release on bail. Since defendant did not appear in court on August 9, 1984, the court issued a $5,000 alias capias for his arrest, and set a bond forfeiture hearing. Defendant did not appear at the bond forfeiture hearing on September 12, 1984, and the court ordered the bond forfeited. A Notice of Bond Forfeiture was mailed to the surety October 11, 1984.
Subsequently, defendant appeared in court with counsel and pleaded not guilty. This was on December 11, 1984, sixty-one days after the Notice of Bond Forfeiture had been mailed to SCIC. At that time, the court rescinded the September 12, 1984 judgment of bond forfeiture. Trial was set for January 18, 1985. When defendant did not appear in court on that date, another alias capias was issued. On May 28, 1985, the court ordered defendant's bond forfeited in favor of the State of Louisiana, as defendant once again failed to appear before the court. Notice of this forfeiture was mailed on June 7, 1985. Thereafter, SCIC filed their Motion to Set Aside Judgment of Bond Forfeiture and Petition for Nullity of Judgment, which was denied by the trial court.

OPINION
SCIC has urged throughout this litigation a judgment of bond forfeiture is a binding civil judgment and its role is that of surety on a civil contract. However, as a commercial surety on a bond for a criminal defendant, SCIC's contract is based on La.Code Crim.P. arts. 323-343, and on La. R.S. 15:81-89, rather than on the articles of the Louisiana Civil Code concerning suretyship in general.
SCIC's first argument is that the bond forfeiture judgment is an ordinary judgment *1386 on a civil obligation and should be governed by La.Code Civ.P. art. 1841, concerning finality of judgments. This does not take into consideration the fact that La.R.S. 15:85(A)(3) allows a bond forfeiture judgment to be set aside when specific requirements are met. A judgment of bond forfeiture is not an ordinary judgment, but is specifically governed by La. R.S. 15:85(A)(1), (3), and La.Code Crim.P. arts. 338 and 339. La.R.S. 15:85(A)(1) allows a judgment of bond forfeiture to be rendered against a defendant and his surety in solido, should defendant fail to appear in court as required.
La.R.S. 15:85(A)(3) provides:
Any judgment forfeiting an appearance bond rendered under the provisions of this Section shall, at any time within sixty days after mailing of notice, be set aside upon the surrender or the appearance and trial and conviction or acquittal of the defendant, or upon continuance granted upon the motion of the district attorney after such appearance. Upon payment of a bond forfeiture judgment by a surety or agent, such payment shall be placed in a trust account by the appropriate custodian of such forfeiture payments until expiration of the time allowed by law for the surety to return the fugitive to the jurisdiction of the court. If within six months after mailing of notice, the defendant appears or is surrendered to the court, the entire amount of the bond forfeited shall be returned to the surety within 30 days of said appearance or surrender.
Therefore, if certain requirements are met, including a surrender of defendant according to La.Code Crim.P. arts. 338 and 339, the judgment of bond forfeiture may be set aside.
SCIC cites footnote authorities found in Gennuso v. State, 339 So.2d 335, 337 (La.1976), for the proposition that while an action to forfeit a bail bond or to declare null a judgment decreeing the forfeiture of a bail bond is a civil proceeding and subject to the rules of civil procedure, it is treated as a criminal proceeding for the purpose of determining appellate jurisdiction. That is correct. However, we are not dealing with a determination of subject matter jurisdiction as was this court in Gennuso. We are dealing with a different matter entirely, a matter addressed by La.Code Crim.P. arts. 338 and 339, as well as La.R.S. 15:85(A). This action contesting the bond forfeiture judgment is subject to the rules of the Louisiana Code of Criminal Procedure and the Revised Statutes which apply specifically in this case.
SCIC next argues the bail contract was merged into the judgment of bond forfeiture, which when set aside by the trial court extinguished the obligations owed by the surety on the bail contract. We conclude, rather than extinguishing the surety's obligations on the contract, the setting aside of the bond forfeiture judgment placed the surety and defendant in the position they occupied before the bond was forfeited. Citing Salling Wiping Cloth Co. v. Sewell, Inc., 419 So.2d 112, 116 (La.App. 2d Cir.1982), Glazer Steel Co. v. LaRose Shipyard, Inc., 372 So.2d 250, 251 (La.App. 1st Cir.1979), Agricultural Enterprises, Inc. v. Morgan, 140 So.2d 40, 41 (La.App. 2d Cir.1962), and Cassiere v. Cuban Coffee Mills, 225 La. 1003, 74 So.2d 193 (1954), SCIC states in their brief, "It is a rudimentary legal principle that once a judgment on a breach of a bond contract is rendered, all the obligations under that bond contract become extinguished, having been merged into the final judgment." None of the cases cited stand for that principle, as none dealt with a bail bond contract. Sailing was a suit to enforce the acceleration provision of a lease. Glazer was a suit on an open account. Cassiere was a suit to revive a judgment before it prescribed; and, Agricultural Enterprises was a suit to cancel a lease. Reliance upon these cases for the extinguishment of the surety's obligations on the bail bond contract is misplaced. The argument lacks merit.
Next, SCIC contends the court's setting aside of the judgment of bond forfeiture on December 11, 1984, constituted the creation of a new agreement or the extension of the terms of the original agreement *1387 or remission of the debt under the bail contract, releasing the surety. In fact, there was no new or extended agreement made on the bail contract. The bond forfeiture judgment was set aside when defendant appeared in court. He was released on his original bail and the bond was reinstated. This did not change the agreement between defendant and surety, and it certainly did not release either one of them on their obligation. At that point in time, SCIC certainly could not have been displeased with the setting aside of the bond forfeiture. Having escaped the penalty of forfeiture, SCIC now seeks to have it both ways, i.e., set aside the bond forfeiture and then nullify the bond obligation. We do not believe such a result is mandated by law, custom or justice.
Finally, SCIC argues defendant's appearance in court on December 11, 1984 constituted a self-surrender, properly made under La.R.S. 15:85(A)(3) and La.Code Crim.P. art. 338(A), thus releasing the surety from the obligation of the bond and extinguishing the surety contract. Article 338(A) states:
A surety may surrender the defendant or the defendant may surrender himself, to the officer charged with his detention, at any time prior to forfeiture or within the time allowed by law for setting aside a judgment of forfeiture of the bail bond. Upon surrender of the defendant, the officer shall detain the defendant in his custody as upon the original commitment and shall acknowledge the surrender by a certificate signed by him and delivered to the surety. Thereafter, the surety shall not be responsible for the defendant.
The defendant in this case appeared in court. He did not surrender himself to the officer charged with his detention, as specififed in the article. Even if he had, the time allowed by law for the setting aside of the judgment of bond forfeiture, sixty days from the mailing of the notice of bond forfeiture, had lapsed. Therefore, defendant was never properly surrendered for the purpose of relieving the surety of its obligation on the appearance bond.
For the foregoing reasons stated, we affirm the judgments rendered below.
AFFIRMED.
LEMMON, J., concurs and assigns reasons.
DIXON, C.J., respectfully dissents.
CALOGERO, J., dissents.
DENNIS, J., dissents.
LEMMON, Justice, concurring
When the defendant appeared in court after the bond had been forfeited, the trial court properly set aside the judgment of bond forfeiture. However, the rescinding of the judgment of bond forfeiture did not return the parties to the exact positions they occupied when the original bond was issued. The surety may no longer have wanted to remain on the bond because of the defendant's failure to appear on the date originally set for arraignment, and the difficult question is whether the surety's consent was necessary to release the defendant on the same bond.
If this case involved an uncompensated surety, perhaps fundamental fairness would require notice to and consent of the surety before a defendant who has once "skipped bail" and reappeared voluntarily may be released on the original bond, even if the amount of bail remains the same. However, at least in the case of a commercial surety, who for a fee has guaranteed to produce the accused at any time during the proceedings, notice and consent are not necessary unless there is a change in the charge or in the substance or amount of the bail undertaking.[1]
*1388 When a compensated surety has bound itself that a defendant (according to the Bail Agreement and La.C.Cr.P. 330):
"shall personally appear ... on the day for which he shall be so notified ..., then on whatever day afterwards the said Court shall be held ... and will appear at all stages of the proceedings thereof to answer that charge or any related charge, and will at all times hold himself amenable to the orders and process of the Court",
the mere release of the defendant on the same bond, after he has once failed to appear, does not of itself violate the terms of the bond or terminate the obligation of the surety. See United States v. Jones, 719 F.2d 110 (5th Cir.1983); cf. State v. Thomas, 442 So.2d 794 (La.App. 4th Cir. 1983), cert. denied 445 So.2d 436 (La.1984). Here, there was no change in the charge or in the substance of the bail undertaking. The compensated surety was no worse off when the defendant appeared after forfeiture (apparently on his own initiative) and was released on the same bond than if the defendant had never appeared at all after his initial failure. Therefore, the surety remained obligated on the original bond.

On Application for Rehearing
CALOGERO, Justice.
I would grant a rehearing in this case.
The surety was not a party to the agreement between the principal/defendant and the creditor/State when they agreed to the defendant's release after a judgment setting aside the judgment of bond forfeiture. The surety is not bound by the terms of this later agreement as only the agreement of the surety to be bound on the bail bond after the defendant's re-release could have bound the surety.
NOTES
[1] State v. Wheeler, 449 So.2d 1275 (La.App. 4th Cir.1986).
[1] The ultimate purpose of bail is to deter the flight of the defendant, while allowing the defendant to be released pending trial or appeal. See 10A J. Appleman, Insurance Law and Practice § 6116.15 (1981); see also Comment, Bail, An Ancient Practice Reexamined, 70 Yale L.J. 966 (1961), discussing the modern and historical justifications for release and the relationship to various approaches to bail. The payment of money by the accused, while presumably having a deterrent effect, is not the goal sought by the state.

The American Bar Association's Standards for Criminal Justice questioned whether bail provided by commercial guarantors actually achieves the desired goal of deterring flight by the accused. The 1968 standards recommended that acting as surety for compensation be prohibited. The 1980 standards, while calling for the eventual abolition of compensated sureties, suggested restrictions on licensing and rigid regulation. See Project on Minimum Standards for Criminal Justice, Standards Relating to Pretrial Release § 5.4 (1968); Standards for Criminal Justice, Pretrial Release § 10.5 (1980).